HAVERSTOCK *v.* HAVERSTOCK.

[No. 30,759. Filed April 26, 1965.]

*Winslow Van Horne,* and *Grant M. Van Horne,* of Auburn, for appellant.

*Albert M. Friend* and *Deller, Dygert & Friend,* of Angola, for appellee.

ACHOR, J.—This case was transferred to this court under Rule 2-23. For Appellate Court opinion, see:

*Haverstock* v. *Haverstock* (1964), 201 N. E. 2d 876 (reh. den.).

Appellee, Kathryn Haverstock, filed a suit for divorce against her husband, G. Kenneth Haverstock, upon the general statutory grounds of cruel and inhuman treatment. Although the action was contested by appellant a divorce was granted to the appellee upon her complaint.

The error asserted in the motion for new trial and here relied upon as cause for reversal is that the judgment was contrary to law.

Specifically appellant asserts that, while this court on appeal must not weigh the evidence on the issue of appellant's misconduct, appellee is denied the relief, which she sought and which was granted by the trial court, because of her own misconduct which, as a matter of law, would have entitled the appellant a divorce had he asked for it. It is upon this theory that appellant rests his case that the judgment is contrary to law.

The principle of law upon which appellant relies, commonly described as the doctrine of recrimination, is firmly established in this state as fundamental to the law of divorce. This court, commenting with approval upon the subject in the case of *Alexander* v. *Alexander* (1894), 140 Ind. 555, 558, 559, 38 N. E. 855, quoted from several treatises as follows:

> "It is said in 2 Bishop on Marriage, Divorce and Separation, section 564: 'If the allegations on both sides are proved, the finding in each suit will, as recrimination, bar the other, and neither party can have a divorce.'
>
> "So, in Stewart Marriage and Divorce, section 314, it is said: ' . . . if both parties have a right to a divorce, neither has.'
>
> "In Browne Divorce, p. 84, a like statement is made: 'Where each of the married parties has committed a matrimonial offense, which is a cause for divorce, so that when one asks for this remedy, the

other is equally entitled to the same, whether the offenses are the same or not, *the court can grant the prayer of neither.'* " (Cases cited.) [Our italics.] See also: *McMurrey* v. *McMurrey* (1936), 210 Ind. 595, 4 N. E. 2d 540; *Sims* v. *Sims* (1958), 128 Ind App. 408, 146 N. E. 2d 111; *Stinson* v. *Stinson* (1947), 117 Ind. App. 661, 74 N. E. 2d 745; *Smiley* v. *Smiley* (1943), 114 Ind. App. 138, 51 N. E. 2d 98 [all of which reaffirm the doctrine of recrimination].

Thus we are presented with the single decisive question in this case: Were the uncontroverted facts regarding the conduct of the appellee and the appellant such as would have, as a matter of law, entitled the appellant to a divorce?

First we examine the evidence regarding the conduct of the appellee. According to all of the evidence, none of which is contradicted or subject to inference to the contrary, appellee had an affair with a married man for a period of several years prior to the filing of her suit for divorce. During this period she had been with him approximately every two weeks, made at least one out-of-town trip with him and entertained him in her home during her husband's absence. At one time appellee agreed to terminate this relationship but later admitted that she did not abide by her agreement. It was upon appellant's demand that appellee cease entertaining this man in their home that appellee ceased to cohabit with the appellant and thereafter filed this suit for divorce. Because of this admitted infidelity, the appellant husband was, as a matter of law, clearly entitled to a divorce from appellee had he sought such action unless there is other evidence in the record which, as a matter of law, would have justified appellee's misconduct.

The most substantial evidence in support of appellee's allegation of cruel and inhuman treatment are:

(1) That appellant, for 17 years prior to the filing of this action for divorce, either failed or refused to support their family and that appellee was obliged to work in order to meet the necessary expenses of the family. However, the uncontradicted evidence as to this circumstance is that appellant, a man of limited education, was in the continuous employ of a single construction contractor, for whom appellant worked on 12 to 15 "different jobs." That there were several layoff periods of two to four months, most of which were caused by unseasonable weather. During these layoff periods appellant drew unemployment compensation and reported his availability for work. During these periods he often worked independently on some repair jobs. Obviously he could not undertake some independent jobs and keep his regular employment. True, appellee may have been obliged to work and support the family; but we judicially know that in today's society this is a common practice. (2) Admittedly, there was "continuous argument" between the parties and that appellant's language may sometimes have been obscene. However, both parties testified that the cause which precipitated most of their argument was appellee's illicit relationship with another man. If appellant on occasion used obscene language regarding appellee we cannot say that such language was not consistent with appellee's behavior. (3) It is also urged that appellant had waived his right to a divorce because he had condoned appellee's infidelity, by continuing to live with her over a period of several years, knowing of her misconduct. However, the fact as noted above and confirmed by both parties is that this misconduct was the cause of "continuous argument" with an ultimatum by appellant after their children had left home, which ultimatum was rejected by appellee and was followed by her leaving their home. Appellee's own

testimony in this regard negates the fact of condonation.

The evidence regarding appellant's conduct does not in any way justify the illicit conduct of appellee. Thus, under the doctrine of recrimination, the granting of a divorce to the appellee constituted an error of law.

It is urged that, since the doctrine of recrimination is merely a doctrine, the courts should be granted broad discretion in its application, and that this court should not interfere with the exercise of discretion in the trial court, even though the decision of the trial court is in clear violation of this doctrine. We cannot accede to this proposed derogation of the law. To do so would throw into question all laws of divorce and would permit the dissolution of homes, with no standards of law by which to judge either the conduct of the parties to a marriage contract or the decision of courts.

We are aware that the denial of a divorce in this case may or may not result in the re-establishment of the home of the parties, and it may or may not prevent the destruction of another home. (Appellant has asserted his willingness to re-establish their home on condition that appellee would give up her paramour.) Of this we are certain, that every free and stable society is rooted in two basic concepts: (1) It is governed by rule of law and not by rule of men and (2) the home is the foundation—the focus of moral authority—without which no free society can endure.

Furthermore, there is no reason to believe that succeeding generations will hold their mutual covenants of marriage in any higher respect than that which is demanded of our courts.

Judgment reversed.

Arterburn, C. J. dissents [without opinion].

Myers, J. concurs.

Jackson & Landis, JJ. concur in result.

NOTE.—Reported in 206 N. E. 2d 368.